UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

STEVEN SOLOMON,

                        Plaintiff(s),

-against-

UNIONDALE UNION FREE SCHOOL DISTRICT,
JULIUS BROWN, in his individual and official
capacity, and WILLIAM ANZIANO, in his individual
and official capacity,

                        Defendant(s).

**OPINION & ORDER**
03-CV-2415 (SJF) (ETB)

----------------------------------------X
FEUERSTEIN, J.

I.    Introduction

Steven Solomon ("plaintiff") commenced this employment discrimination action on May 14, 2003, against defendants Uniondale Union Free School District ("District"), Julius Brown ("Brown"), and William Anziano ("Anziano") (collectively, the defendants), alleging claims under Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, et seq. (Title VI), and 2000e, et seq. (Title VII); 42 U.S.C. §§ 1983 and 1985; New York State Executive Law § 296 (NYSHRL), and for breach of contract. Defendants now move pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the amended complaint. For the reasons set forth herein, defendants' motion is granted in part and denied in part.

-1-

2. BACKGROUND

   A. <u>Factual Background</u>

   Plaintiff is a Jewish male who resides in the County of Nassau, State of New York. (Complaint [Compl.] ¶ 7). The District is a public school district, which receives federal government funds, and is a duly constituted municipal subdivision of the State of New York. (Compl. ¶ 8). Brown was, at all relevant times, the principal of Lawrence Road Middle School (LRMS), which is in the District. (Compl. ¶ 9). Anziano was, at all relevant times, the athletic director of the District. (Compl. ¶ 10).

   Plaintiff holds a bachelor's degree in health education, a master's degree in physical education, coaching certificates and an administrative degree accrediting him to be a principal, assistant principal and superintendent. In or about 1989, plaintiff was hired by the District to teach health and physical education. (Compl. ¶¶ 12-13). He has also coached various teams for the District. (Compl. ¶ 13).

   B. <u>Procedural Background</u>

   Plaintiff commenced this action on May 14, 2003, against all three defendants, alleging violations of Title VI and VII, 42 U.S.C. §§ 1983 and 1985, and the NYSHRL. In addition, plaintiff asserted a breach of contract claim for breach of the collective bargaining agreement between the District and his union. Defendants moved to dismiss plaintiff's (1) Title VII claim, insofar as asserted against Brown and Anziano individually, for failure to state a claim; (2) Title VII claim as time-barred; (3) Title VI, §§ 1983 and 1985, and NYSHRL claims as time-barred; (4) § 1983 claims, insofar as asserted against the District, for failure to state a claim; (5) § 1983 claims, insofar as asserted against Brown and Anziano in their official capacities, for failure to state a

claim; (6) § 1985 claim for failure to state a claim; and (7) breach of contract claim for failure to state a claim.

By order dated December 16, 2003, I dismissed (1) plaintiff's claims against Brown and Anziano, individually; (2) plaintiff's claims against the District pursuant to Title VII predicated on conduct which occurred prior to February 13, 1999; (3) plaintiff's claims pursuant to 42 U.S.C. §§ 1983 and 1985, Title VI and New York Executive Law § 296 predating May 14, 2000; (4) the claims against Brown and Anziano in their official capacities; and (5) the 42 U.S.C. § 1985 and (6) breach of contract claims. Plaintiff was given leave to replead his claims against the District based upon 42 U.S.C. § 1983 to the extent that the claims were predicated upon conduct occurring after May 14, 2000. A subsequent motion to amend the complaint was denied on February 14, 2007.

The Amended Complaint ("Complaint") alleges violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), Title VI of the Civil Rights Act, 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. §§ 1983 and 1985, and the New York Executive Law ("Exec. Law") § 296.

Plaintiff alleges that he was denied athletic coaching positions, security assignments, and the opportunity to attend teacher development workshops because he is Jewish and not of Italian descent. In particular, he accuses Anziano, the District's Athletic Director, of discriminating against him for these reasons.

Solomon also alleges that the District retaliated against him because he complained about Anziano's discrimination to the EEOC in 1999. He alleges that Brown, the principal of the District's Lawrence Road Middle School ("LRMS"), where Solomon worked created a hostile work environment and had him transferred to the

California Avenue Elementary School ("California Avenue School") in retaliation for his complaints. He also complains about his alleged treatment at the California Avenue School which he contends was retaliatory and created a hostile work environment.

3. ANALYSIS

   A. Standard of Review

A court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C); Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of demonstrating entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir.2005). The court is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty America v. Town of West Hartford, 361 F.3d 113, 122 (2d Cir.2004); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, "[t]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "[I]f the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). A properly supported motion for summary judgment will not be defeated by "the mere existence of some alleged factual dispute between the parties" alone. Id. at 247-48. Thus, the nonmoving party must set forth "concrete particulars" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted). To "merely to assert a conclusion without supplying supporting arguments or facts," BellSouth Telecommunications Inc. v. W.R. Grace & Company-Conn., 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted), will be insufficient to defeat the motion.

Although District Courts should be cautious in granting summary judgment in discrimination actions, nonetheless "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir.1997). See also Schiano v. Quality Payroll Systems, 445 F.3d 597, 603 (2d Cir.2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir.2001)); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

B. Employment Discrimination

The parties correctly agree that the same burden shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is utilized to determine claims brought under Title VII, Title VI, 42 U.S.C. § 1983 and New York Executive Law § 296. Quinn v. Green Tree Credit Corp., 159 F.3d 759

(2d Cir.1998). Thus, all of plaintiff's claims of employment discrimination based upon disparate treatment may be analyzed together.

To establish a prima facie case of employment discrimination based on disparate treatment a plaintiff must show (1) membership in a protected class; (2) qualification for the position sought; and (3) sufferance of an adverse employment condition (4) under circumstances which raise an inference of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 817.

If a plaintiff succeeds in establishing prima facie employment discrimination, the employer is given an opportunity to provide a legitimate nondiscriminatory reason for any challenged employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir.2000). Once an employer provides a nondiscriminatory basis for an employment decision, the burden shifts to plaintiff to demonstrate that the proffered nondiscriminatory reason for the employment decision is pretextual. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir.2006).

Here, it is not disputed that the plaintiff is a member of a protected class (Jewish male) and that he was qualified (a) for all of the coaching positions he sought; (b) for the security supervisor positions he sought and (c) to attend the teacher workshops.

    a.    <u>The Coaching Positions</u>

        i.    The Selection Process

Plaintiff does not dispute that he applied for, and was assigned to, coaching positions as Assistant Coach of the LRMS Football Team every year from 1999 through 2005. Plaintiff complains, however, that he was not chosen to coach basketball despite

five (5) annual applications to do so.[1] He contends that he was not given the basketball coaching positions under circumstances which raise an inference of discrimination because non-Jewish and/or Italian teachers were given the coaching positions despite the fact that plaintiff was the most qualified applicant.

Defendants contend that in each instance the basketball coaches were selected by a committee which interviewed the applicants, rated them pursuant to objective criteria and made recommendations to the Board of Education based on the ratings. The Board of Education made the final decision. It is defendants' position that Mr. Anziano cannot be said to have discriminated against plaintiff because he was not making the recommendation to the Board of Education. Moreover, the Committee members were faculty and community residents who did not inquire as to the religious or ethnic background of any candidates.

According to defendants, the legitimate, nondiscriminatory recommendation by an independent Committee based on an objective rating system of relevant qualifications requires a finding that plaintiff has failed to raise an inference of discrimination and thus failed to make a prima facie case of employment discrimination. However, plaintiff contends that the members of the Committee were friends or colleagues of Anziano, who were appointed to the Committee by him and followed Anziano's recommendations for appointments. While Anziano contends that the Committee process was a response to multiple applications for coaching positions, plaintiff contends that the formation of Committees was a pretext for Anziano's

---

[1] Plaintiff did not timely apply for a basketball coaching position for the 2002-2003 season.

continuing discrimination. According to the deposition testimony of the former Superintendent Mary Cannie, the committee process was established in response to plaintiff's complaints of discrimination and although Anziano served on the selecting committee only for the 1999/00 selection process, he continued to have a role in the selection process.

It is not disputed by defendants that Mr. Anziano appointed the Committee members, although, according to former Superintendent Mary Cannie, Mr. Anziano made Committee appointments in consultation with the relevant school principal. However, Mr. Anziano has submitted an affidavit stating that he "did not have any input as to how the members of the committees ranked the various applicants." (Anziano Affidavit p. 8, ¶ 14). Members of the Committee have also submitted affidavits indicating that Mr. Anziano did not influence their determinations and that they independently "graded" applicants on objective criteria. (See Affidavits of Diana, Ottavino, Borsetti-Nicol). Moreover, the composition of the selection committee changed annually.

### ii. Prior Conduct

Both the plaintiff and defendants contend that conduct of defendants prior to 1999, while no longer a part of this lawsuit, should be considered as background. Prior acts of an employer are admissible for the purpose of establishing or negating discriminatory intent because "discrimination analysis must concentrate not on individual incidents, but on the overall scenario . . . . What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents." (internal quotation marks

omitted). Raniola v. Bratton, 243 F.3d 610, 622 (2d Cir.2001) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (3d Cir.1990)). According to plaintiff, conduct of defendants prior to 1999 raises an inference of discrimination demonstrating Anziano's discriminatory animus. According to defendants, conduct prior to 1999 demonstrates Anziano's nondiscriminatory policies and practices.

Plaintiff contends that prior to 1999 he was recommended for specific coaching positions by Tom Diana, the District's high school basketball coach, and Robert Tucker, principal at LRMS prior to 2000, and that Anziano ignored those requests. However, defendants have submitted affidavits and deposition testimony by Diana and Tucker, respectively, which contradict plaintiff's claims. Plaintiff also claims that Scott Rubenstein, a colleague of plaintiff's, overheard Mr. Anziano making an anti-semitic statement. Plaintiff has submitted a letter admittedly signed by Mr. Rubenstein to that effect. However, Rubenstein's deposition testimony indicates that he signed a statement prepared by the plaintiff, but did not have a clear recollection of any anti-semitic statement of Anziano made, if at all, ten years before Rubenstein signed the letter for plaintiff. And, although plaintiff claims that Greg Didio, a high school health teacher and former football coach, told him that Anziano had indicated that plaintiff would not be getting a coaching position and it was "personal", Mr. Didio's deposition testimony is also to the contrary. Finally, plaintiff has failed to show that his qualifications were objectively significantly superior to the successful candidate in each instance. Thus, the admissible evidence is, for the most part, contrary to plaintiff's claims.

Defendants have also shown that prior to 1999 Anziano was instrumental in

initially hiring plaintiff and recommending that he receive tenure; that plaintiff received many of the coaching positions he requested from Anziano and was requested by Anziano to apply for others; that individuals chosen for coaching positions did not, for the most part, have Italian surnames; and that no one ever inquired as to an applicant's religion. Nevertheless, viewing the evidence in the light most favorable to plaintiff, the Rubenstein letter, despite being refuted by his deposition testimony, is sufficient to raise an issue of fact regarding Anziano's allegedly discriminatory animus. Moreover, the contradictory statements of Cannie and Anziano raise an issue of fact regarding Anziano's continuing role in the coach selection process.

In reviewing the evidence in the record, "the court must draw all reasonable inferences in favor of the nonmoving party[;] . . . it may not make credibility determinations or weigh the evidence . . . [and must] disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-151, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). See also Nelson v. Metro-North Commuter R.R., 235 F.3d 101, 105 (2d Cir.2000) (viewing evidence 'in the light most favorable to the nonmoving party' in reviewing grant of judgment as a matter of law) (internal quotation marks omitted); Raniola, 243 F.3d at 616. Therefore, defendants' motion for summary judgment is denied as to plaintiff's claims that he was denied basketball coaching positions under circumstances which raise an inference of discrimination.

  b. Security Supervisor Assignments

Plaintiff also alleges that he was denied security supervision assignments at high school sponsored functions because he was Jewish/non-Italian.

Plaintiff meets the first three elements of a claim of discrimination as he is (a) a member of a protected class; (b) qualified to perform security supervision at school events and (c) the denial of security supervisor positions is an adverse employment action since each assignment creates an opportunity for additional compensation.

However, according to the unrefuted deposition testimony of defendant Anziano, plaintiff never specifically requested any security supervisory position at the high school and plaintiff concedes that he was given security assignments at the LRMS where he taught. His claim of discrimination is based upon the fact that he was never given a security assignment at the district's high school under circumstances which he claims raise an inference of discrimination because defendant Anziano supervised the assignment of security supervisors at the high school.

Mr. Anziano's affidavit lists seven (7) teachers, believed by him to be Jewish who received high school security assignments during his tenure, rebutting plaintiff's conclusory claim of disparate treatment based upon religion. In addition, Mr. Anziano's deposition indicates that preference was given to high school faculty members who were familiar with the students they would be supervising. Robert Tucker, former principal at the LRMS, concurred with the preference for intra-school security assignments and plaintiff does not point to specific high school security assignments sought by him, denied by Mr. Anziano and given to non-Jewish/Italian non-high school teachers. Nor does plaintiff deny that he was offered the opportunity to transfer to the high school, by Mr. Anziano, but declined the transfer which, presumably, would have provided greater opportunity to secure high school security assignments. Defendants have thus provided legitimate nondiscriminatory reasons for their security assignments

which plaintiff has failed to show are pretextual. Therefore, plaintiff has failed to sustain a prima facie claim that he was denied security positions under circumstances raising an inference of discrimination, and this claim is dismissed.

### c. The Teaching Workshops

Plaintiff claims that defendants failed to offer him the opportunity to attend continuing education programs beyond a single, contractually required, annual program.

Plaintiff concedes that he was never denied permission to attend any program he sought to attend, but contends that other teachers were solicited by Anziano to attend additional programs. Plaintiff contends that he was not offered these opportunities based on the fact that he was Jewish/non-Italian.

As with his claims based on coaching and security supervision positions, plaintiff has established that he was a member of a protected class and, as a teacher in the defendant district, qualified to attend workshops. However, plaintiff does not dispute that he was permitted to attend any workshop he requested and has failed to demonstrate that not being chosen for attendance at workshops for which no request was made was an adverse employment action or that he was not chosen under circumstances raising an inference of discrimination.

> "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.' Terry [v. Ashcroft, 336 F.3d 128,138 (2d Cir. 2005] (citations omitted). The Second Circuit has recognized that examples of adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique [] to a particular situation.' Id. (internal quotations and citations omitted).

-12-

Browne v. City University of New York, et. al., 419 F. Supp. 2d 315, affirmed, 2006 WL 3102469 (2d Cir.2006)

Plaintiff has failed to demonstrate how the failure of Anziano to choose him to attend workshops, which plaintiff failed to indicate he wished to attend, constituted an adverse employment action. Therefore, his claim based upon selection to attend workshop programs is dismissed.

### C. Hostile Work Environment and Retaliation

#### 1. Hostile Work Environment

> In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.2000). Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir.2003). Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.' Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir.2004). Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' Alfano v. Costello, 294 F.3d 365, 374 (2d Cir.2002).
>
> To analyze a hostile work environment claim, we look to the record as a whole and assess the totality of the circumstances, see Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir.2001), considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,' Harris, 510 U.S. at 23, 114 S.Ct. 367.

Demoret, 451 F.3d at 149.

Initially, it is noted that plaintiff's allegations of hostile work environment and retaliation coincide with the change in administration at LRMS in 2000. At that time, the

-13-

principal, Robert Tucker, who socialized with plaintiff outside the school setting, retired.

Plaintiff contends that Brown, who became the principal of LRMS in 2000, improperly accused plaintiff of dereliction of responsibilities; coerced a student to write a negative statement about plaintiff; reprimanded plaintiff; disciplined plaintiff "harshly" following a student injury; suspended plaintiff's coaching responsibilities absent supervision; required plaintiff to attend to school business following jury duty; denied plaintiff the right to speak at faculty meetings; required plaintiff to use a different entrance to Brown's office than other teachers; denied plaintiff keys for the gym office; "disrupted" plaintiff's classroom by making an unannounced "visit"; revoked plaintiff's position as equipment supervisor; reprimanded plaintiff for distributing calculators to students during standardized testing; accused plaintiff of tardiness; placed plaintiff on paid administrative leave and transferred plaintiff to the California School.

Plaintiff also contends that at the California School he was subjected to different duties and schedules than other teachers; criticized for permitting non-faculty visitors to meet with him at the school; denied the use of bathroom facilities; reprimanded for leaving early despite permission to do so; excessively scrutinized and subjected to unreasonable restrictions by the school's principal Terri M. Mangum and vice-principal Lynnda Nadien.

> [A] plaintiff alleging a hostile work environment claim must also establish that 'the conduct at issue was not merely tinged with offensive connotations, but actually constituted *discrimination* because of [race or another protected category].' Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (emphasis in original) (internal quotations and citations omitted).

As a matter of law, the conduct of which plaintiff complains is insufficient to sustain a claim of hostile work environment. In almost every instance the conduct of

which plaintiff complains was a response to his own conduct and in every instance defendants have offered legitimate nondiscriminatory reasons for their actions which plaintiff has failed to show were pretextual.

In addition, many of plaintiff's allegations are unsupported by admissible evidence, inaccurate, mischaracterizations of or simply contrary to the admissible evidence provided, in major part, by defendants. For example, although plaintiff claimed to have a letter by Nancy Vetter attesting to the anti-semitic animus of Brown, Vetter's deposition testimony is to the contrary and plaintiff did not produce the letter despite a request to do so. And in the case of being denied keys to the gym office, plaintiff's claim that the denial of his request violated a Board posting, is inaccurate. Contrary to plaintiff's claim, the letters submitted by students do not attest to an effort by Brown to malign plaintiff. Moreover, plaintiff concedes that he engaged in almost all of the conduct which occasioned concern, counseling and reprimand by Brown, but contends that Brown's reaction to that conduct was excessive, particularly the placement of plaintiff on administrative leave with pay and transfer to the California School. However, according to Mary Cannie, the District Superintendent at the time, she contacted and consulted with supervisory district personnel and they decided to suspend plaintiff pending an investigation of his altercation with Brown. Following that investigation plaintiff was transferred by Cannie and Brown was admonished.

Even assuming, however, that the acts of defendant could be considered to have been pervasive and subjectively and objectively abusive, plaintiff has not demonstrated that any of these acts were causally related to the fact that he was Jewish. The sole allegation regarding religion is in plaintiff's allegation that other Jewish members of the

faculty complained to him about Brown's anti-semitic conduct. However, plaintiff has also failed to substantiate this allegation and indeed, the deposition testimony of Linda Vetter and Scott Rubenstein are to the contrary. Therefore, plaintiff has failed to demonstrate that any of the conduct of Brown was discriminatory based upon plaintiff's religion. Insofar as plaintiff's allegations are directed to his tenure at the California School, plaintiff has not even made an allegation of religious discrimination on the part of Mangum and Nadien, much less provided evidence of it. Therefore, plaintiff's claims based upon allegations of hostile work environment are denied.

2. Retaliation

Title VII forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII. 42 U.S.C. § 2000e-3(a).

In order to present a prima facie case of retaliation under Title VII, a plaintiff must adduce sufficient evidence to permit a rational trier of fact to find [1] that he engaged in a protected activity, [2] that the employer was aware of this participation, [3] that the employer took action against the plaintiff which would chill the right to engage in protected activity, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action. Burlington Northern & Santa Fe Railway Co. v. White, ___ U.S. ___, 126 S.Ct.2405, 165 L.Ed.2d 345 (2006); Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir.2001); see, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir.2005); Terry, 336 F.3d at 141; Quinn, 159 F.3d at 769.

> Retaliation claims brought pursuant to Title VII, 42 U.S.C. § 2000e-3, are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Terry, 336 F.3d at 141; Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir.1986). Under the McDonnell Douglas analysis, a plaintiff must first establish a prima face [sic] case of retaliation, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of retaliation under Title VII, an employee must show (1) that he or she participated in a protected activity; (2) that the employer was aware of the activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse employment action. Terry, 336 F.3d at 141; Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir.2001). 'Title VII is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.' Terry, 336 F.3d at 140-141 (internal quotations and citation omitted). Although, a retaliatory motive must be 'at least a substantial or motivating factor behind the adverse action.' Raniola, 243 F.3d at 625 (internal quotations and citations omitted), the burden of establishing a prima face [sic] case is minimal. Mandell v. County of Suffolk, 316 F.3d 368, 378 (2d Cir.2003); de la Cruz v. New York City Human Resources Admin. Dept. of Social Services, 82 F.3d 16, 20 (2d Cir.1996).

Browne v. City of New York, 419 F.Supp.2d 316, affirmed, ___ Fed Appx. ___, 2006 WL3102469 (2d Cir.2006).

Plaintiff has failed to demonstrate either adverse action which would objectively chill an employee's right to engage in protected activity or a causal connection between the conduct of which he complains and his EEOC complaint.

To demonstrate causal connection a plaintiff may show temporal proximity or that others similarly situated to plaintiff, but for the protected activity, were treated differently. Kessler v. Westchester County Department of Social Services, 461 F.3d 199, 210 (2d Cir.2006); Cifra, 252 F.3d at 217; Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir.1996). Plaintiff filed his EEOC complaint in December of 1999. The incidents of retaliation which plaintiff complains began in September of 2000, nine

(9) months after plaintiff filed his EEOC complaint and more than a year before the agency issued its decision.

Assuming that a negative evaluation could be construed to be an adverse action which would chill one's constitutional rights, plaintiff has failed to demonstrate that the evaluations and criticisms he received were unwarranted other than to state in conclusory fashion that they were unfair. Indeed, plaintiff concedes that he engaged in the conduct which precipitated the criticism and it would appear that the administration would have been irresponsible not to have required plaintiff to comply with school rules regarding tardiness, absence from duty schedules and proper administration of standardized examinations. Therefore, plaintiff has failed to demonstrate that defendant engaged in conduct which would objectively chill a reasonable employee's right to engage in protected activity. Moreover, plaintiff has also failed to provide evidence that other faculty members, similarly situated to plaintiff, but for the complaint to EEOC were not given negative evaluations, counseling and reprimands for similar conduct. Thus, plaintiff has failed to show a causal connection between the evaluations, counseling and reprimands he received and the protected activity in which he engaged. [2]

---

[2] The revocation of plaintiff's position as equipment manager was explained by Brown as a measure to place plaintiff on an equal footing as his faculty colleagues who were, by contract, required to perform "duty and one-half". As a result of his equipment manager position, plaintiff had avoided this contractual obligation during Tucker's administration and received a stipend in addition placing him at an advantage over his colleagues. Moreover, the position had been given to plaintiff by Tucker, although the position in every other school was handled by the custodian. Thus, the removal of plaintiff as equipment manager, which could be considered an adverse employment action, was done to equalize faculty responsibilities at LRMS. Plaintiff has failed to demonstrate that this explanation was a pretext for retaliation or that others similarly situated were treated differently. In any event, this claim was resolved by the parties in

Insofar as plaintiff contends that he suffered discriminatory retaliation at the California School, it is clear that his conduct was the trigger for the counseling, admonitions and criticism he received and he has failed to demonstrate that others who engaged in the same conduct but did not engage in a protected activity were treated differently. Moreover, plaintiff was transferred to the California School in 2003, two (2) years after he filed his complaint with the EEOC and more than a year after the agency's finding, in direct response to his confrontation with Brown. Thus, plaintiff has failed to demonstrate temporal proximity to the protected activity which he claims triggered his transfer or that others similarly situated but for his complaint to EEOC were treated differently, thereby failing to demonstrate a causal connection required to sustain a claim of retaliation. Plaintiff's retaliation claims are, therefore, dismissed in their entirety.

The parties shall appear on **Wednesday, March 14, 2007 at 10:30 a.m. at the Central Islip Courthouse** for a status conference to schedule a trial date.

IT IS SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: February 16, 2007
       Central Islip, New York

---

a confidential stipulation of settlement, precluding it from consideration here.